(May 3, 1912.)'

# FRANCIS M. ARMSTRONG, Respondent, v. W. C. JARRON, Appellant.

## [00 Pac. 000.]

TAXES—PROPERTY SUBJECT—SALE—TAX DEED—COMPLIANCE WITH RE-
QUIREMENTS OF STATUTORY PROVISIONS—DIRECTORY—JURISDICTIONAL
—LACHES OF OWNER—RIGHT TO RECOVER—EQUITY.

(Syllabus by the court.)

1. Where a final receipt is issued by the United States govern-
ment upon proof being made as required by the laws of the United
States, and a receiver's certificate is issued dated October 27, 1905,
such land is assessable for the year 1906.

2. Under the provisions of sec. 1764, Rev. Codes, a tax deed duly
acknowledged and approved is *prima facie* evidence that: "1. That
the property was assessed as required by law; 2. The property was
equalized as required by law; 3. The taxes were levied in accord-
ance with law; 4. The taxes were not paid; 5. At a proper time and
place the property was sold as prescribed by law, and by the
proper officers; 6. The property was not redeemed; 7. The person
who executed the deed was the proper officer; 8. Where the real
estate was sold to pay taxes on personal property, that the real
estate belonged to the person liable to pay the tax."

3. Under the provisions of sec. 1784, Rev. Codes, "Omissions, er-
rors or defects in form in any assessment-book, when it can be as-
certained therefrom what was intended, may be supplied or cor-
rected by the assessor at any time prior to the delinquent sale and
after the original assessment was made."

4. Under the provisions of sec. 1788, Rev. Codes, "No assess-
ment or act relating to assessment or collection of taxes is illegal
on account of informality, nor because the same was not completed
within the time required by law."

5. Where a tax deed is introduced in evidence it is *prima facie*
evidence of title, and it is incumbent upon the person attacking
the tax title to prove the omission of some jurisdictional act or
step which renders the tax title void, such as, first, that the land
was not subject to taxation; second, that the tax against said land
was paid; third, that the land has been redeemed from the tax
sale in the manner provided by law; fourth, any other jurisdictional
question, where omissions and errors have been made in assessments

and sales of property for delinquent taxes, and such questions are not jurisdictional and are merely legislative directions in such proceedings, and by such omissions and errors the property owner is prejudiced, then such facts may be shown to defeat the tax title.

6. Where property is subject to taxation, a substantial compliance with the requirements of the law in making assessments of taxes and in the procedure under the statute leading up to the issuing of a tax deed is all that is required, and the mere failure of officials to perform the duty required of them by law cannot be taken advantage of by a property owner for the sole purpose of escaping such taxation; there must be prejudice and injury to such owner.

7. The findings of the trial court to the effect that certain provisions of the statute had not been complied with relating to the assessment of property and the preparation of the records showing the same and the procedure thereon relating to the sale and the issuing of a tax certificate and tax deed, are all matters relating to omissions and errors not jurisdictional, and are merely directory as to the duties of officers, and do not of themselves render void the assessment or the validity of the certificate of sale or tax deed issued.

(SULLIVAN, J., dissents.)

APPEAL from the District Court of the Second Judicial District for Nez Perce County.   Hon. E. C. Steele, Judge.

Action to quiet title.   Judgment for appellant.   *Reversed*.

James B. Cordiner, and Daniel Needham, for Appellant.

Respondent received the register's final certificate and the receiver's final receipt for said land on Oct. 25, 1905.   Therefore, said land was subject to taxation for all purposes during 1906 and 1907.   (Sec. 1643, Rev. Codes; *Witherspoon v. Duncan*, 71 U. S. (4 Wall.) 210, 18 L. ed. 339; *People ex rel. McCullough v. Shearer*, 30 Cal. 645, and cases cited; Black, Tax Titles, sec. 37, and authorities cited; 1 Cooley, Taxation, 3d ed., p. 136, and cases cited.)

By the introduction of the tax deed in evidence, appellant proved that after Aug. 1, 1910, the date of said tax deed, he became the owner in fee simple of the land in controversy (Secs. 1764, 1765, 1766, Rev. Codes; *Co-op. Sav. & Loan Assn. v. Green*, 5 Ida. 660, 51 Pac. 770; *Bacon v. Rice*, 14 Ida. 107, 93 Pac. 511; *Wilson v. Locke*, 18 Ida. 582, 111 Pac. 247;

*Stewart v. White,* 19 Ida. 60, 112 Pac. 677) ; also the existence
and validity of all antecedent steps required by law and the
authority of the several officers who acted in the matter.
(Secs. 1764, 1765, Rev. Codes; Black, Tax Titles, 2d ed., 454;
37 Cyc. 1459, 1460.)

In order to defeat appellant's tax title, respondent must
prove the omission of some jurisdictional act or step in the
proceedings on which appellant's tax deed is based.   (*Wilson
v. Locke, supra; Stewart v. White, supra; McGowan v. Elder,*
19 Ida. 153, 113 Pac. 102; *Rollins v. Wright,* 93 Cal. 395, 29
Pac. 58; *Straus v. Foxworth* (N. M.), 117 Pac. 831.)

In adjudicating the rights of the parties, the court should
not overlook the importance and legal effect of the curative
statutes of the state of Idaho which are applicable.   (Sec.
1788, Rev. Codes; 1 Cooley, Taxation, 3d ed., p. 523, and au-
thorities cited; Black, Tax Titles, 2d ed., sec. 491; 37 Cyc.
1378–1380; *Wallapai Min. & Dev. Co. v. Territory,* 9 Ariz.
373, 84 Pac. 87.)

The failure to verify the assessment-roll is a mere irregular-
ity which does not affect the validity of the tax proceedings.
(*Auditor-General v. Sparrow,* 116 Mich. 574, 74 N. W. 881;
*Gates v. Johnson,* 121 Mich. 603, 80 N. W. 709; *Auditor-Gen-
eral v. Griffin,* 140 Mich. 427, 103 N. W. 854; *Twinting v.
Finlay,* 55 Neb. 152, 75 N. W. 548; *Spiech v. Tierney,* 56 Neb.
514, 76 N. W. 1090; *State Finance Co. v. Mather,* 15 N. D.
386, 11 Ann. Cas. 1112, 109 N. W. 350; *Wabash Ry. Co. v.
People,* 138 Ill. 316, 28 N. E. 57; *Rollins v. Wright, supra.*)

It is a general rule, even in the absence of a statutory enact-
ment such as ours, that the provisions of a statute in regard
to the time upon which or within which acts are to be done
by a public officer are directory.   (*Hooker v. Bond,* 118 Mich.
255, 76 N. W. 404, and cases cited; *Haskel v. Reigel,* 26 Okl.
87, 108 Pac. 368, and cases cited.)

At the time that respondent commenced his action, the
alleged informality was corrected, for the affidavit required
by sec. 1724 had then been attached to the assessment-book.
(*Sheldon v. Township of Marion,* 101 Mich. 256, 59 N. W.

614; *Welles v. Battelle,* 11 Mass. 477; *Gibson v. Bailey,* 9 N. H. 168.)

The mere filing of the affidavit is not the jurisdictional. fact. (*Williams v. City of Caldwell,* 19 Ida. 514, 114 Pac. 519.)

Even though there had been a mistake in the reference to the name of the owner of the land, such an error would not have been material, and would not affect appellant's title to the land in controversy. (Sec. 1789, Rev. Codes; *White Pine Mfg. Co. v. Morey,* 19 Ida. 50, 112 Pac. 674; *Birney v. Warren,* 28 Mont. 64, 72 Pac. 293; *McQuade v. Jaffray,* 47 Minn. 326, 50 N. W. 233; *Tyler v. Hardwick,* 6 Met. (Mass.) 470; *Castillo v. McConnico,* 168 U. S. 674, 18 Sup. Ct. 229, 42 L. ed. 622.)

The court will take judicial notice that all townships in Nez Perce county are situated north of the base line. (*Stanton v. Hotchkiss,* 157 Cal. 652, 108 Pac. 864.)

"The description of land in the assessment-roll is sufficient if it affords the means of identification and informs the owner what tract is delinquent, or at least is not calculated to mislead him." (Black, Tax Titles, 2d ed., sec. 112; Cooley, Taxation, 407, 745; *Keeley v. Saunders,* 99 U. S. 443, 25 L. ed. 327; *Saranac Land & Timber Co. v. Roberts,* 177 U. S. 318, 20 Sup. Ct. 642, 44 L. ed. 786; 27 Am. & Eng. Ency. of Law, 2d ed., 684; *Oregon S. L. R. Co. v. Irrigation Dist.,* 16 Ida. 606, 102 Pac. 904; *Washington Timber Co. v. Smith,* 34 Wash. 625, 76 Pac. 268.)

The provision of sec. 1730 is only directory. (1 Cooley, Taxation, 3d ed., p. 489; Cooley's Const. Lim., 7th ed., 113.)

When the tax collector signed the tax certificate by using a rubber stamp, with the intention of signing his name, he thereby complied with the law. (*Hamilton v. State,* 103 Ind. 96, 53 Am. Rep. 491, 2 N. E. 299.)

"Substantial compliance with the requirements of the law in making assessments is all that is required. If property is subject to taxation, it cannot escape through some technical failure of the officer to perform his duty, unless it has actually misled the party to his injury." (*Bacon v. Rice,*

*supra; Co-op. S. & L. Assn. v. Green, supra; Oregon S. L. R. R. Co. v. Pioneer Irr. Dist., supra; McGowan v. Elder, supra.*)

And "the presumption is that the officer performed his duty in making tax sales." (*Stewart v. White, supra.*)

In order to defeat appellant's tax title, respondent must prove the omission of some jurisdictional step in the tax proceedings on which the appellant's tax deed is based, to wit, that said land was not subject to taxation, or that the tax thereon had been paid, or that said land had been redeemed from the aforesaid tax sale in the manner provided by law. Everything else is a mere informality which does not affect the substantial rights of respondent. (*Rollins v. Wright, supra; Straus v. Foxworth, supra; McCready v. Sexton & Son,* 29 Iowa, 356, 4 Am. Rep. 214; *Lucas v. Purdy,* 142 Iowa, 359, 19 Ann. Cas. 974, 120 N. W. 1065, 24 L. R. A., N. S., 1294; *De Treville v. Smalls,* 98 U. S. 521, 25 L. ed. 174.)

Fred E. Butler, for Respondent.

Whatever statutory provisions are made for notice and hearing must be regarded as mandatory, and a compliance with them in all essentials is a condition precedent to any further proceedings. (Cooley on Taxation, 3d ed., 631, 1393.)

"Before the officer who is designated by law for the duty of collecting taxes can lawfully proceed to do so, he must have his warrant for the purpose, in due form of law. . . . . Whatever the statute provides for, the collector must have, and he is a trespasser if he proceeds to compulsory action without it. Upon this point the decisions are unanimous." (Cooley, Taxation, 3d ed., 793, 794; *Hilbish v. Hower,* 58·Pa. 93; *Chalker v. Ives,* 55 Pa. 81; *Miller v. Kern County,* 137 Cal. 516, 70 Pac. 549; *Peebles v. Taylor,* 121 N. C. 38, 27 S. E. 999; *Maxwell v. Paine,* 53 Mich. 30, 18 N. W. 546; *Westfall v. Preston,* 49 N. Y. 349; *Brevoort v. City of Brooklyn,* 89 N. Y. 128.)

The assessment-roll must be verified, and without such verification, tax sales made are void. (*O'Donnell v. McIntyre,* 37 Hun (N. Y.), 615; *Kelly v. Craig,* 27 N. C. 129.)

Certification must be in writing. (*State v. Thompson*, 18 S. C. 538.)

If the affidavit has not been made, the facts which should appear cannot be shown *aliunde*. (*Marsh v. County Supervisors*, 42 Wis. 502.)

Certification must be made within the required time. (*Walker v. City of Burlington*, 56 Vt. 131.)

Failure to verify the roll is a necessity, not a mere informality. (*Lamb v. Farrell*, 21 Fed. 5; *Krutz v. Chandler*, 32 Kan. 659, 5 Pac. 170; *Lewellen v. Schooley*, 84 Mo. 447; *Pike v. Martindale*, 91 Mo. 268, 1 S. W. 858; *St. Louis & S. F. Ry. v. Epperson*, 97 Mo. 300, 10 S. W. 478.)

Tax sales are made exclusively under a statutory power. Defects in the conditions to a statutory authority cannot be aided by the courts; if they have not been observed, the courts cannot dispense with them. (Cooley, Taxation, 3d ed., 912.)

The warrant, authority, certificate, list, or process, by whatever name it may be called, was never issued to the tax collector, and any attempted sale by him was void, as whatever the statute provides, the tax collector or salesman must have. (*Lamb v. Farrell*, 21 Fed. 5; *Morrow v. Smith*, 8 Okl. 267, 61 Pac. 366; *Mattocks v. McLain Land & Inv. Co.*, 11 Okl. 433, 68 Pac. 501; *Asper v. Moon*, 24 Utah, 241, 67 Pac. 409; *Kepley v. Scully*, 185 Ill. 52, 57 N. E. 187; *McGhee v. Sampselle*, 47 W. Va. 352, 34 S. E. 815; *Mullins v. Shaw*, 77 Miss. 900, 27 So. 602, 28 So. 958; *Kelley v. Craig*, 27 N. C. 129; *Hannel v. Smith*, 15 Ohio, 134.)

If the tax deed fails to recite that a sale made at a different date from the date advertised was an adjourned sale, the tax title is invalid. (*Gregg v. Jesberg*, 113 Mo. 34, 20 S. W. 652.)

The presumption that the rubber-stamp impression is the signature of the tax collector cannot prevail. The tax certificate therefore stands as an unsigned tax certificate. (36 Cyc. 455.)

If the law is not substantially complied with, or if there is an omission of any jurisdictional act or step, appellant's

tax title necessarily fails. (*Co-operative Sav. & L. Assn. v. Green*, 5 Ida. 660, 51 Pac. 770; *Wilson v. Locke*, 18 Ida. 582, 111 Pac. 247; *McGowan v. Elder*, 19 Ida. 153, 113 Pac. 102.)

STEWART, C. J.—The respondent, Francis M. Armstrong, commenced this action in the district court of Nez Perce county for the purpose of quieting his title to 160 acres of land located in said county and described as follows: The northeast quarter of the southwest quarter, the north half of the southeast quarter, the southeast quarter of the southeast quarter of section 30, township 32 north, range 3 W., B. M. The complaint alleges that he is the owner in fee simple of the property and that the defendant claims an estate in said land adverse to the plaintiff, under and by virtue of a certain tax sale certificate and a tax deed which are alleged to be void. The defendant filed an answer and cross-complaint. In the answer the defendant denied the plaintiff's title to said land and denied the invalidity of the tax sale and tax deed held by the defendant. In the cross-complaint the defendant alleges that ever since the 1st day of August, 1910, he has been the owner in fee simple of the land described in the complaint under and by virtue of a tax title thereto; that said land was duly and regularly assessed in 1906 for state, county and school taxes, that said taxes were not paid and became delinquent and the land was duly and regularly sold for delinquent taxes on the 9th day of July, 1907, and a tax sale certificate was issued to Nez Perce county; that on the 25th day of February, 1910, the county assigned said tax sale to defendant, and that said land was not redeemed from the tax sale within three years from the date thereof, and in pursuance of said tax sale and said assignment of said tax certificate a tax deed for said land was regularly issued to the defendant on the 1st day of August, 1910; that said land was sold for taxes for the year 1907 and a delinquent tax sale certificate was issued, which defendant redeemed, and appellant asks that the title to said land be quieted against the plaintiff and all other persons. An answer to the cross-complaint was filed by plaintiff and

the validity of defendant's tax title was denied, and it is alleged that said land was not subject to taxation for the years 1906 and 1907, as it was the property of the United States of America. It is also alleged in the answer to the cross-complaint that no certificate as required by sec. 1727 of the code was appended to the tax-roll for the year 1906; and that notice was not given of the meeting of the board of equalization for the said year as required by sec. 1728; that the assessor did not attend the meetings of the equalization board, as required by sec. 1697; that the assessor did not attend the final meeting of said board, as required by sec. 1701; that the assessment-book was not certified, as required by sec. 1724; or certified at all until nearly five years after it should have been certified, the certificate being added March 7, 1911; that the delinquent tax list for 1906 was not published as required by sec. 1743; that no delinquent tax list was ever made or delivered, as required by secs. 1739 and 1740; that no comparison of the delinquent tax with the assessment-book was had, as required by sec. 1768; that no certificate was made or appended to the tax sales book, as required by sec. 1761; that publication of the delinquent tax list was not had, as required by secs. 1743, 1744, 1745, 1746, 1747 and 1748; that the certificate of sale of the property for taxes was not signed by the assessor as required by sec. 1760, nor did the certificate of sale properly describe the land, as required by sec. 1759, and the tax deed does not substantially recite the matters contained in the tax sale certificate, as required by sec. 1763; that the auditor failed to verify any statement made by him, as required by sec. 1730; and finally respondent tendered with the said answer to the cross-complaint, and paid into the court for the benefit of the appellant the sum of $101.44, in full for all amounts paid by appellant on the purchase of the tax sale certificate and for taxes claimed to have been paid for the tax deed, all of said sums being computed with interest at the rate of eighteen per cent per annum from the time of the respective payments. thereof, and five dollars as a reasonable fee for making a deed to appellant.

The cause was tried and the court made its findings of fact and conclusions of law and adjudged that the tax deed and tax title to the land was null and void, and the title was quieted in the respondent.

Certain findings of the trial court with reference to the validity of the title acquired by appellant by reason of the tax sale and the tax deed issued thereon, and upon which the trial court held the title of appellant void under said tax deed, are urged by appellant as errors upon this appeal. The court finds:

"Finding 5. That in the making up of the assessment-book of Nez Perce county, state of Idaho, for the year 1906, the assessor of said county failed to append the certificate required by sec. 1727 of the Rev. Codes of the state of Idaho, or any certificate of any kind whatsoever.

"Finding 6. That the records and files of the office of the county auditor of Nez Perce county, state of Idaho, and the records and files of all other county officers of said county, fail to show that any notice of the meeting of the county board of equalization of said Nez Perce county, state of Idaho, was had, published or given during the year 1906, nor do any of said records show any affidavits of publication of notice thereof, as required by sec. 1728 of said codes.

"Finding 7. That the records of the meetings of the county board of equalization of said Nez Perce county, state of Idaho, for said year 1906, fail to show the attendance of the assessor of said county, at any time, during any of said meetings for said year 1906, as required by sec. 1697 of said codes.

"Finding 8. That the pretended assessment-book of said Nez Perce county, state of Idaho, for said year 1906, did not at the time the same was delivered, or claimed to have been delivered, by the auditor of said county to the assessor and tax collector thereof, contain the certificate required by sec. 1724 of said codes, nor did said pretended assessment-book for said year, at any time, contain any certificate whatever, until the 7th day of March, in the year 1911 when there was appended and added to volume 4 of said assessment-book a

certificate or writing . . . . at the request of Cordiner & Cordiner, attorneys . . . . for . . . . W. C. Jarron. Said certificate or writing is in words and figures as follows:

" 'CERTIFICATE OF AUDITOR TO TAX-ROLL OF 1906.

" 'State of Idaho,
County of Nez Perce,—ss.

" 'I, J. R. Lydon, Clerk of the Board of County Commissioners for Nez Perce County, State of Idaho, do solemnly swear that as such . . . . of said Board of County Commissioners for Nez Perce County, Idaho, I have kept correct minutes of all of the acts of said board touching alterations in the assessment-book; that all alterations agreed to and directed to be made have been made and entered in said assessment-book, and that no changes or alterations have been made therein, except those authorized; and that as Auditor I have reckoned the respective sums due as taxes and have added up the columns of valuations and taxes as required by law.

" 'J. R. LYDON.

" 'Subscribed and sworn to before me this 7th day of March, A. D. 1911.

" 'DANIEL NEEDHAM,
" 'Probate Judge.'

"That the assessment-book to which the certificate or writing of March 7, 1911, is appended is the sole and only book purporting to be an assessment-book of said Nez Perce county for said year 1906.

"Finding 8a. That what was purported to be the delinquent tax list for the year 1906 has not been shown by the affidavit of the printer or publisher of any newspaper that said list was published, as required by secs. 1748 and 6053 of said code.

"That in what is purported to be a published delinquent list for delinquent taxes for said year 1906, the name 'F. M. Armstrong' is used in place of 'Francis M. Armstrong,' the

name 'Francis M. Armstrong' appearing in what is purported to be the assessment-book for said year 1906.

"That in said purported published delinquent tax list for said year 1906, and in said purported assessment-book for said year 1906, all designation of the township, either in full or by abbreviation, as to its being 'north' or 'south' is omitted.

"That neither in said purported assessment-book, nor in said purported delinquent tax list, nor in the purported certificate of sale claimed to have been purchased by defendant, nor in said purported tax deed heretofore mentioned, is the real property claimed to have been assessed, returned as delinquent, published as delinquent, or sold, or conveyed by said tax deed, described with sufficient certainty to locate said land, or to determine the number of acres claimed to have been assessed, returned as delinquent, sold or conveyed by said tax deed.

"That in said purported published delinquent list, the real property of plaintiff and attempted to be described in said purported published delinquent list was advertised to be sold on the 8th day of July, 1907, and sale thereof was had on the 9th day of July, 1907.

"Finding 9. That no comparison was ever made or had by the assessor of Nez Perce county, state of Idaho, by or with the auditor of said county, of the delinquent list or tax sales for said year 1906, with the original or subsequent assessment-book of said year 1906, as required by sec. 1768 of said codes, nor was any oath taken, written or subscribed by the assessor or tax collector, as required by said sec. 1768; nor did the auditor of said Nez Perce county, state of Idaho, at any time, certify that the original tax certificates or any of them, of property sold to the county, for or on account of unpaid or delinquent taxes for said year 1906, or any copy of any tax sale certificate, in the certificate-book were or was correct as required by sec. 1761 of said codes, nor was any certificate of any kind ever appended at any time to said certificate-book of property sold for or on account of

delinquent or unpaid taxes for said year 1906, as required by said sec. 1761.

"Finding 10. That the tax sale certificate, said certificate being No. 80, alleged to have been issued for sale of plaintiff's property for delinquent taxes for said year 1906, was not signed by the assessor or tax collector of said Nez Perce county, as required by sec. 1760 of said code. That in lieu of the signing of such purported certificate there is appended to such purported tax sale certificate what is purported to be a fac-simile rubber-stamp impression of the signature of said assessor and tax collector.

"That in said purported tax sale certificate, plaintiff's property is attempted to be described in the following manner: NE 4 SW 4, N2SE4, SE 4 SE 4 Sec. 30, Tp. 32 R. 3 W."

"Finding 11. That the auditor of said Nez Perce county, state of Idaho, has failed to verify any statement made by him or required to be made by him, as to any matter touching the assessment or collection of taxes for said year 1906, as required by sec. 1730 of said codes."

That prior to this trial plaintiff tendered to and deposited with the clerk for the benefit of the defendant the sum of $101.44, the amount paid out by defendant, with full interest as provided by law, and also five dollars for making and recording tax deed and acknowledging the same.

Upon such findings of fact, the court finds as conclusions of law, that, first, the plaintiff is entitled to a decree that he is the owner of the premises described in the complaint; second, that the pretended sale of said property for unpaid or delinquent taxes for the year 1906, and made on the 9th day of July, 1907, is null and void, and that the tax deed issued to defendant under said pretended sale is null and void.

From the court's findings of fact and conclusions of law, it is apparent that the trial court based his conclusions of law upon the facts found that certain provisions of the statute in relation to the assessment of real property and the collection of taxes levied against said property and the sale

of said property because of nonpayment of taxes, etc., were not followed and complied with.

It appears from the findings and the evidence in this case that the respondent made final proof for the land in controversy in October, 1905, and received a register's certificate on October 27, 1905, and therefore such land became assessable for the year 1906 (sec. 1643, Rev. Codes) ; such taxes were not paid by the respondent, and on the 9th day of July, 1907, said land was sold for such assessment to the county of Nez Perce, and on the 25th day of February, 1910, the certificate of sale was sold and transferred to the appellant and said land was not redeemed, and on the 1st day of August, 1910, a tax deed was made to the appellant; that the taxes for the year 1907 were not paid, and that said property was sold to the county, and that on June 23, 1911, the appellant paid to the county $36.36 for the redemption from sale for the taxes for the year 1907.

This action was commenced on November 20, 1911. There is no evidence in the record in this case as to who has been in possession of the premises at any time except the possession of the respondent as shown by his certificate from the land office issued in October, 1905. Whether he continued in possession thereafter is not shown; neither is there any evidence to show that the appellant ever went into possession or has made any improvement on said land; neither is there any evidence as to who paid the taxes for the years 1908, 1909 or 1910; neither is there any evidence in this case that the respondent ever made any inquiry with reference to the taxation of said lands at any time after he received the final receipt from the land office up to the time this action was commenced; neither is there any evidence to show that he offered to pay any assessment or any taxes of any kind or nature either against himself or said lands.

The trial court seems to have relied entirely upon the public records of Nez Perce county in the assessor's office and the recorder's office, and the evidence of J. R. Lydon, clerk of the district court and ex-officio auditor and recorder, and who held the same office in the year 1906, and the tax

sale certificate and the tax deed and the treasurer's receipt. This brings us to a consideration of such findings.

Before considering the sections of the statute referred to in each of the findings, it is proper to have in mind other provisions of the statute relating to the effect of errors or defects in assessments and the legality of assessments made by officers in making assessments and collections of taxes, and also the effect of a tax deed as evidence. Sec. 1784, Rev. Codes, provides: "Omissions, errors or defects in form in any assessment-book, when it can be ascertained therefrom what was intended, may be supplied or corrected by the assessor at any time prior to the delinquent sale and after the original assessment was made."

Sec. 1788, Rev. Codes, provides: "No assessment, or act relating to assessment, or collection of taxes is illegal on account of informality, nor because the same was not completed within the time required by law." And sec. 1764, Rev. Codes, provides:

"The matters recited in the certificate of sale must be recited in the deed, and such deed duly acknowledged or proved is *prima facie* evidence that:

"1. The property was assessed as required by law;

"2. The property was equalized as required by law;

"3. The taxes were levied in accordance with law;

"4. The taxes were not paid;

"5. At a proper time and place the property was sold as prescribed by law, and by the proper officer;

"6. The property was not redeemed;

"7. The person who executed the deed was the proper officer;

"8. Where the real estate was sold to pay taxes on personal property, that the real estate belonged to the person liable to pay the tax."

In referring to the latter section, in *Bacon v. Rice,* 14 Ida. 107, 93 Pac. 511, this court said: "It will thus be seen that the tax certificate and tax deed to which objection is made recite facts which are not necessary to recite in either. The statute makes certain matters in the deed *prima facie* evidence of

certain facts, and conclusive evidence as to certain other facts, and requires the deed to recite the matters required to be recited in the certificate of sale,'' and after reciting the facts says: ''From the evidence it appears that he made no inquiry about the taxes; that he never offered any payment; that he never ascertained whether the property had been sold. He permitted others to pay the taxes; he stood by and permitted a tax deed to be issued . . . . and exercised no fixed, specific ownership over the property in controversy. His possession was casual and questionable. . . . . Under all the facts in this case, we are clearly of the opinion that the appellant is not in a position to raise the constitutionality of the acts in question. The appellant is certainly guilty of such laches in paying his taxes and asserting his right and ownership to this property that he should not now be permitted to come into a court of equity and ask that such silence be permitted to inure to his benefit.'' Further on in the opinion this court quotes and approves the case of *Co-operative Savings & Loan Assn. v. Green,* 5 Ida. 660, 51 Pac. 770, in which this court, through Justice Sullivan, says: ''Substantial compliance with the requirements of the law in making assessments is all that is necessary. If property is subject to taxation, it cannot escape through some technical failure of the officer to perform his duty, unless it has actually misled the party to his injury.''

In the case of *Wilson v. Locke,* 18 Ida. 582, 111 Pac. 247, this court said: ''We conclude that such tax deeds are *prima facie* evidence of the regularity of all of the proceedings from the assessment of the property, inclusive, up to the execution of the deed, but this does not prevent the owner of the property from showing a defense that any of the jurisdictional acts in the assessment or sale of the property have not been performed.

''There was no effort on the part of the appellant to introduce evidence tending to show that any jurisdictional act required to be done in the assessment and sale of said property had not been done by the treasurer or officer authorized to make such sale.''

In the case of *McGowan v. Elder,* 19 Ida. 153, 113 Pac. 102, this court announces the rule of law in the syllabus, as follows: ''When property is the subject of taxation, and the assessment has been legally made, and there is default in the payment of such taxes, and the property is sold at tax sale in accordance with the provisions of the statute, such property cannot thereafter escape taxation through some failure of the officer to perform his duty unless it has actually misled the party to his injury.''

In the case of *White Pine Mfg. Co. v. Morey,* 19 Ida. 49, 112 Pac. 674, after referring to a number of sections of the statute requiring certain recitations to be made in tax certificates and tax deeds, this court says: ''It will therefore be seen that sec. 1763 recognizes the substance instead of the form, and authorizes the officer to make a deed containing 'substantially the matters contained in the certificate.' Sec. 1764, when construed in the light of the previous section, cannot be said to require a literal *verbatim* copy of the certificate embodied in the deed. It has been accordingly held that not all the provisions of the statute with reference to the assessment of property and the sale for taxes are mandatory, but that, on the contrary, some of those provisions are only directory.'' And it is further said in said opinion: ''On the other hand, as above observed, the later authorities are overwhelming to the effect that if the proceeding has been regular and a tax sale has been made in substantial conformity with the law, that the time within which the land owner may redeem is fixed and limited by the statute, and that after the expiration of such period he has no right of redemption whether a deed has issued or not.''

In the case of *Stewart v. White,* 19 Ida. 60, 112 Pac. 677, this court followed the rule announced in *Bacon v. Rice,* and cited the case of *Couts v. Cornell,* 147 Cal. 560, 109 Am. St. 168, 82 Pac. 194, and said: ''It was held in effect . . . . that there is an enforceable obligation to pay a general annual tax which in a sense is legal as well as moral; and a lien therefor is established by law irrespective of the irregularities or informalities of the assessment. Even if there were

some informalities in the assessment or collection of the taxes upon said land, those were all cured by the provisions of sec. 1788, Rev. Codes, which section is as follows:

" 'No assessment, or act relating to assessment, or collection of taxes is illegal on account of informality, nor because the same was not completed within the time required by law.' "

In finding No. 5 the court finds that the assessor of said county failed to append the certificate required by sec. 1727 of the Rev. Codes or any certificate of any kind whatsoever. Sec. 1727, Rev. Codes, provides: "On or before the first day of July in each year the assessor must complete his assessment-roll. He and his deputies must take and subscribe an affidavit in the assessment-book, to be substantially as follows." Then follows the oath in which the assessor or his deputy verifies that he has made diligent inquiry and examination to ascertain all the property within the county subject to assessment and that the same has been listed and assessed on the assessment-book equally and uniformly, and that he has complied with the duties imposed upon him by law. This section is directory and not mandatory and is required for the purpose of making the assessment-roll as made by the assessor verify itself as to the truth of the things contained in it, and for the purpose of showing that the assessor has performed his duties. In said section it is provided: "But the failure to take or subscribe such affidavit as required by this section shall not in any manner affect the validity of the assessment. The making of such affidavit is declared, however, to be a duty pertaining to the office of every assessor in this state," thus showing the intention of the legislature to be, that the failure to make the affidavit should not affect the validity of the assessment made by the assessor, but would subject the assessor to certain proceedings for failure to perform his official duties. J. R. Lydon, present clerk of the district court and ex-officio auditor and recorder, and who held the same office in 1906, testifies that the affidavit required by secs. 1724 and 1727 was not appended to the assessment at the time the assessment-book was delivered to the tax collector, but was attached

on the 7th day of March, 1911. It was an oversight. He had done it on all previous assessment-rolls. This finding of the trial court, therefore, would in no way affect the validity of the tax sale or the tax deed or the appellant's title.

Finding No. 6 is to the effect that the records and files in the office of the county auditor and other county officers did not show that any notice of the meeting of the county board of equalization was published or given during the year 1906, and that the records do not show any affidavits of publication of notice as required by sec. 1728 of the Rev. Codes. Sec. 1728 provides:

"As soon as completed, the assessment-book, together with the statements, must be delivered to the clerk of the board of county commissioners, who must immediately give notice thereof, and of the time the board will meet to equalize assessments, by publication in a newspaper, if any is printed in the county; if none, then in such manner as the board may direct. . . . . "

While this section provides that the clerk of the board must give notice of the meeting of the board of equalization by publication, it does not require that such acts shall be recorded upon the records of the board or upon the records of any county officer, and the presumption is that the board complied with the law in giving notice that they met as a board of equalization, and in the absence of proof to the contrary, the tax deed itself is evidence that the property was equalized as required by law.

In the case of *Gilbert v. Canyon County,* 14 Ida. 438, 94 Pac. 1029, this court in dealing with the record to be kept of the proceedings of the board of county commissioners said:

"This statute does not require that the board of county commissioners shall recite in their proceedings their decisions and judgments with the same precision and exactness required by courts of record. A substantial compliance with the statutes is sufficient. It was not necessary in this case for the board of commissioners to find as a fact that notice of election had been given for the statutory period, or to find that it was to the best interest of the county that a

bridge be constructed. If, in fact, a notice was given, and the board proceeds with the steps required after notice, and records such steps, it is a substantial finding of the board that the bridge was necessary and that notice was given."

The mere failure to record the facts as to the publication of such notice, in some record, would not render the meeting and action of the board of equalization void or invalidate the equalization made at a session, if held. This section is clearly directory. Under the provisions of sec. 1693, Rev. Codes, the board of equalization is required to meet on the second Monday in July of each year and the law gave notice to every person of such meeting. (*Inland Lumber etc. Co. v. Thompson,* 11 Ida. 508, 114 Am. St. 274, 7 Ann. Cas. 862, 83 Pac. 933.)

In finding No. 7 the trial court found that the records of the meeting of the county board of equalization for the year 1906 failed to show the attendance of the assessor of said county at any time during any of the meetings as required by sec. 1697 of said Codes. Lydon, clerk, testifies that the records of the board of equalization show its meeting on July 9, 1906, and its adjourning from day to day and final adjournment on the 28th day of July, and that the assessor was not present,—that is, that he was not named in the proceedings as being present.

Sec. 1697, Rev. Codes, provides: "During the session of the board the assessor and any deputy whose testimony is needed must be present, and may make any statement or introduce and examine witnesses on questions before the board." It will be observed from the provisions of this section that the section is permissive, but the assessor is not required to be present, and no penalty is prescribed in the statute for the assessor not being present, and the statute does not require the record to show his presence.

In finding No. 8 the court finds that the assessment-book of Nez Perce county for the year 1906 did not at the time the same was delivered by the auditor to the assessor contain the certificate required by sec. 1724, and did not contain such certificate until on the 7th day of March in the year

1911, when there was appended to the assessment-book, at request of counsel for appellant, the following certificate of auditor of tax-roll of 1906:

"State of Idaho,
County of Nez Perce,—ss.

"I, J. R. Lydon, Clerk of the Board of County Commissioners for Nez Perce County, State of Idaho, do solemnly swear that as such ———— of said Board of County Commissioners, for Nez Perce County, Idaho, I have kept correct minutes of all of the acts of said Board touching alterations in the assessment book; that all alterations agreed to and directed to be made have been made and entered in said assessment-book, and that no changes or alterations have been made therein, except those authorized; and that as Auditor I have reckoned the respective sums due as taxes and have added up the columns of valuation and taxes as required by law.                              J. R. LYDON.

"Subscribed and sworn to before me this 7th day of March, A. D. 1911.                    DANIEL NEEDHAM,
                                  "Probate Judge."

This certificate is substantially in form with the certificate required by sec. 1724, Rev. Codes.

It will be seen that at the time the assessment-book was delivered to the assessor the certificate required by the section was not attached to the assessment-book. The tax deed, however, was *prima facie* evidence that the certificate was in fact attached to said assessment-book, and the burden of proof was upon the respondent to rebut the same, and in addition to the tax deed the respondent introduced in evidence a *"line"* of the assessment-book, being a part of the assessment-roll for that year, showing that the respondent's property was regularly assessed and that the taxes on said land were unpaid and delinquent. This exhibit was a certified copy from the assessment-book, and is evidence that said land was assessed and placed upon the assessment-book as required by law for that year, and the omission of the certificate alone was a mere informality which did not affect either the validity of the

assessment or affect the validity of the appellant's title, and was sufficient to give notice to the respondent of such assessment and sale, and clearly falls within the provisions of sec. 1788, *supra.* (*Wallapai Min. & Develop. Co. v. Territory ex rel. Dennis,* 9 Ariz. 373, 84 Pac. 87; *Auditor General v. Sparrow,* 116 Mich. 574, 74 N. W. 881; *Auditor General v. Griffin,* 140 Mich. 427, 103 N. W. 854; *Twinting v. Finlay,* 55 Neb. 152, 75 N. W. 548; *Spiech v. Tierney,* 56 Neb. 514, 76 N. W. 1090; *State Finance Co. v. Mather,* 15 N. D. 386, 11 Ann. Cas. 1112, 109 N. W. 350; *Wabash Ry. Co. v. People,* 138 Ill. 316, 28 N. E. 57; *Rollins v. Wright,* 93 Cal. 395, 29 Pac. 58.)

Under the provisions of sec. 1788 the fact that the certificate required by law to be attached to the assessment-book was not attached within the time fixed by law did not render the assessment illegal on account of such informality. (*Stewart v. White, supra; White Pine Mfg. Co. v. Morey, supra; McGowan v. Elder,* 19 Ida. 153, 113 Pac. 102; *Williams v. City of Caldwell,* 19 Ida. 514, 114 Pac. 519.)

In this connection we may very properly observe, the proceeding in the assessment and collection of taxes is a proceeding *in rem* and against the property and does not run against the person or the owner (*White Pine Mfg. Co. v. Morey,* 19 Ida. 50, 112 Pac. 674), and under the provisions of sec. 1651 the tax assessed against the property of respondent became a lien on said property after the 2d day of January, 1906, and such lien had the force and effect of an execution duly levied on said land, and could not be removed until the aforesaid tax was paid or said land sold in payment thereof, and the laws of the state made it the duty of the assessor and tax collector to collect the taxes by publishing the list of delinquents and selling the property in accordance with the statute; such was done, and said property having not been redeemed and a deed having been issued, said lien became merged in the appellant's title, and the respondent at all times under the law had notice of such assessment and lien and each step of the procedure as provided by the statute, and the certificate to the assessment-roll would in no way have given

him any further information with reference to the assessment or the sale of the same.

The next finding, which is numbered the same as the former in the record, embraces a number of independent propositions: First, that the court finds that the publishing of the delinquent tax list for the year 1906 was not shown by the affidavit of the printer or publisher of any newspaper as required by secs. 1748 and 6053, Rev. Codes. Neither of these sections requires that the publishing of the delinquent tax list shall be shown by the affidavit of either the printer or the publisher, consequently the failure to show the publication by affidavit is not proof that the list was not published. In this case, however, it is proven that the delinquent tax list was published in the manner and form provided by law, and the affidavit of the publishing of the delinquent list was made and filed by the tax collector with the county auditor in pursuance of the provisions of sec. 1748, Rev. Codes. Second, in said finding the court found that in the publishing of the delinquent list for the year 1906 the name "F. M. Armstrong" is used, whereas in the assessment-book the name "Francis M. Armstrong" is used. There is no contention on the part of respondent that the name F. M. Armstrong does not designate himself or that he was in any manner misled to his prejudice by the name F. M. Armstrong rather than the name Francis M. Armstrong. It further appears that F. M. Armstrong is the name of the person delinquent; therefore in using the name F. M. Armstrong in said delinquent tax list the tax collector published the name of the person delinquent and complied with the provisions of sec. 1743, Rev. Codes. This statute with reference to the use of the name of the owner or supposed owner of the land is directory; therefore, even though there had been a mistake in the reference to the name of the owner of the land, such error would not have been material and would not affect the appellant's title to the land in controversy. (*White Pine Mfg. Co.* v. *Morey,* 19 Ida. 50, 112 Pac. 674.) This defect, however, is further cured by the provisions of sec. 1789 of the Codes, which provides as follows: "When land is sold for taxes correctly imposed as the prop-

erty of a particular person, no misnomer of the owner or sup-
posed owner, or other mistake relating to the ownership
thereof, affects the sale or renders it void or voidable.'' This
seems to dispose of this question entirely. Third, the court
also found that there was no designation of the township as
to its being north or south of the base line. In the assessment
as shown by the exhibit, the same being a transcript of the
assessment-book, showing the assessment of said land to re-
spondent, the tract of land in controversy is described ac-
cording to the government survey, and evidence shows that
all townships in Nez Perce county are north of the base
line; there could be only one township 32, range 3 east of
Boise meridian in Nez Perce county, and said township
would be north of the base line because all townships in Nez
Perce county are north of the base line; therefore, the omis-
sion to state whether the township was north or south of the
base line was immaterial, and could in no way mislead the
respondent. In this same connection this court will take
judicial notice that all townships in Nez Perce county are sit-
uated north of the base line. (Sec. 5950, Rev. Codes; *Stanton
v. Hotchkiss,* 157 Cal. 652, 108 Pac. 864.) Fourth, in said
finding the court finds that the evidence is not sufficient be-
cause the land in controversy is not described with sufficient
certainty in the assessment-book or in the delinquent tax list
or in the certificate of sale or in the tax deed to locate the land
or to determine the number of acres assessed or sold. Said
land is described as follows: ''Lying and being in the County
of Nez Perce and described thus: The NE ¼, SW ¼—N ½,
NE ¼—SE ¼, SE ¼—Sec. 30, Twp. 32, N. R. 3 W. B. M.''
We think the description is in accordance with the govern-
ment survey, and clearly means the northeast quarter of the
southwest quarter and the north half of the southeast quarter
and the southeast quarter of the southeast quarter in section
thirty, township thirty-two north, range three west of Boise
meridian, thus clearly describing a tract of land containing
160 acres according to government survey. (*Stanton v.
Hotchkiss,* 157 Cal. 652, 108 Pac. 864; *Washington Timber etc.*

*Co. v. Smith*, 34 Wash. 630, 76 Pac. 267.)    The land is described in the tax sale certificate as follows:

| "Fractions or other descriptions. | Sec. or Lot | Twp. | Rang. or Blk. |
| --- | --- | --- | --- |
| 4 · 4 2 4 4 4<br>NE SW N SE SE SE | 30 | 32 | 3 W." |

The land is described in the published delinquent list as follows:

"Armstrong, F. M.    Northeast quarter Southwest quarter; North half Southeast quarter, Southeast quarter Southeast quarter Section Thirty, Township Thirty-two, Range Three W. B. M.    Total Taxes $25.59."

The aforesaid description not only describes the land clearly and accurately, but also specifies and designates the number of acres.    Sec. 1787 of the Rev. Codes provides:

"In the assessment of land, advertisement and sale thereof for taxes, initial letters, abbreviations and figures may be used to designate the township, range, section or parts of section, lot or block, and kind of improvement or personal property in the extension thereof."

This section clearly specifies and authorizes the use of figures, initial letters and abbreviations such as were used in these various descriptions, and this method of description is clearly recognized by courts in passing upon this question. (*Saranac Land & Timber Co. v. Roberts*, 177 U. S. 318, 20 Sup. Ct. 642, 44 L. ed. 786; Am. & Eng. Ency. of Law, 2d ed., vol. 27, p. 684; Black on Tax Titles, 2d ed., sec. 112.)    This court, in the case of *Oregon Short Line R. Co. v. Irrigation District*, 16 Ida. 578, 102 Pac. 904, recognizes the foregoing rule.    Many cases might be cited showing similar designations to be sufficient, a few of which we cite: *Stanton v. Hotchkiss, supra; Washington Timber Co. v. Smith, supra; Jenkins v. McTigue*, 22 Fed. 148; *Chestnut v. Harris*, 64 Ark. 580, 62 Am. St. 213, 43 S. W. 977; *Bandow v. Wolven*, 20 S. D. 445, 107 N. W. 204; *Stoddard v. Lyon*, 18 S. D. 207, 99 N. W. 1116; *Herod v. Carter*, 81 Kan. 236, 106 Pac. 32; *Law v. People*, 80 Ill. 268.

It is sufficient to say in this case, however, that the respondent offers no evidence whatever to show that he was in any way misled by reason of the description of said land, either in the assessment or in the publishing of the notice of sale or in the tax certificate or the deed.   In this finding the court found, first, that the land was advertised to be sold on the 8th day of July, 1907, and was sold on the 9th day of July. The deed of appellant shows that the time of the sale of the land was continued from the 8th day of July until the 9th day of July, in accordance with the provisions of sec. 1750 and 1751 of the Rev. Codes.   This cures any discrepancy in the date.

In finding No. 9 the court finds that the evidence does not show that the assessor attended at the office of the auditor with the delinquent tax list or tax sale certificates for the year 1906 and compared the delinquent list with the original or subsequent assessment-book, or that oath was taken by the assessor or tax collector as required by sec. 1768, or that his delinquent tax certificate record contained a correct copy of the tax sale certificates issued for the year 1906.   We are clearly of the opinion that the tax deed rebuts the contention of the appellant, and further that the affidavits provided for by said section are required for the information of the officers and to guide the tax collector in keeping a correct account of the taxes, and in no manner affect the property rights of the owner of property assessed.   (*McGowan v. Elder,* 19 Ida. 153, 113 Pac. 102; *Davis v. Pacific Imp. Co.,* 137 Cal. 245, 70 Pac. 16; Cooley's Const. Limitations, 7th ed., p. 113.)

Finding No. 10: That the evidence is insufficient to show that the assessor and tax collector signed the tax certificate upon which the tax deed is based as required by sec. 1760. This objection is based upon the fact that the tax certificate was signed by using a rubber stamp.   We think the tax deed is presumptive proof that the tax certificate was signed by the tax collector and that this evidence is also corroborated by the testimony of the tax collector, which is as follows: ''Q. Look at the instrument I now hand you and state what it is. A.   Tax sale certificate.   Q.   What number.   A.   No. Eighty.

Q. For what year. A. 1906. Who has the custody of that certificate. A. I have. State how it is signed. A. Signed by J. M. Williams, Assessor, and ex-Officio Tax Collector.''

The fact that the signature of the assessor was attached to the certificate with a rubber stamp instead of writing the name of the assessor when it clearly appears that it was the intention in using such stamp to sign the name of the assessor, would not invalidate the instrument. As said by this court in *Bacon v. Rice,* 14 Ida. 107, 93 Pac. 511: ''Substantial compliance with the requirements of the law in making assessments is all that is required.'' Also other cases previously cited. This is not a jurisdictional requirement and in no way affects the validity of the sale of the property. The correct rule, and the one which has been recognized by this court, is: That where a tax deed is introduced in evidence it is *prima facie* evidence of title, and it is incumbent upon the person attacking the tax title to prove the omission of some jurisdictional act or step which renders the tax title void, such as, first, that the land was not subject to taxation; second, that the tax against said land was paid; third, that the land has been redeemed from the tax sale in the manner provided by law; fourth, any other jurisdictional question. But where omissions and errors have been made in assessments and sales of property for delinquent taxes, and such questions are not jurisdictional and are merely legislative directions in such proceedings, and by such omissions and errors the property owner is prejudiced, then such facts may be shown to defeat the tax title. This latter question has been discussed and passed upon in the decision recently made by this court in the case of *Parsons v. Wrble, ante,* p. 695, 123 Pac. 638. We also cite in this connection: *McGowan v. Elder,* 19 Ida. 153, 113 Pac. 102; *Rollins v. Wright,* 93 Cal. 395, 29 Pac. 58; *Straus v. Foxworth* (N. M.), 117 Pac. 831; *McCready v. Sexton & Son,* 29 Iowa, 356, 4 Am. Rep. 214; *Lucas v. Purdy,* 142 Iowa, 359, 19 Ann. Cas. 974, 120 N. W. 1063, 24 L. R. A., N. S., 1294; *De Treville v. Smalls,* 98 U. S. 521, 25 L. ed. 174; *State Finance Co. v. Mather,* 15 N. D. 386, 11 Ann. Cas. 1112, and notes, 109 N. W. 350.

It will be seen that the findings of the trial court were not sufficient to justify the conclusion of law made by the trial court to the effect that the tax deed was void and that the appellant acquired no title by reason of the same. The evidence in this case shows that the land in controversy was subject to and was duly and regularly assessed for taxes for the year 1906; that the taxes so assessed and levied were not paid and became delinquent; that said land was regularly and in accordance with law sold for such delinquent taxes by the tax collector of said county; that such land was not redeemed from the tax sale within three years from the date thereof; that a tax deed was issued and delivered to the appellant on the 1st day of August, 1910; that the respondent has failed to show that any of the omissions or errors which occurred in the assessment and sale of said land for delinquent taxes in any way misled him or that said respondent was in any way injured by such errors.

The record in this case shows that the findings of fact are based upon specific sections of the statute, and the conclusions of law are founded upon these findings. The judgment is based upon the findings of fact and the conclusions of law, and it is in this respect that this court has considered the questions involved in this case. We have not undertaken to discuss or construe other sections of the code with reference to the collection of revenue, for the reason that the trial court's findings do not refer to such sections.

The judgment is *reversed* and the cause remanded. Costs awarded to appellant.

Ailshie, J., concurs.

SULLIVAN, J., Dissenting.—I am unable to concur in the conclusion reached by my associates, and shall briefly state my views upon one point in the case.

Under the provisions of sec. 1739, Rev. Codes, the tax collector is required to make up and on the fourth Monday of January deliver to the county auditor a complete delinquent list of all property and persons then owing taxes, and

must deliver his assessment-roll to the auditor to remain on file in his office. This statute clearly contemplates that a delinquent list must be made, and I think it contemplates a different and separate list from the regular assessment-roll. Sec. 1742, Rev. Codes, provides that after settlement with the tax collector, the auditor must charge the tax collector with the amount of taxes due on the delinquent tax list with ten per cent added thereto, and deliver the delinquent list, duly certified, to such tax collector. The record in the case at bar shows that the requirements of that statute have never been complied with. No delinquent list was ever made, and if we concede that the original assessment-roll extended as and for a delinquent list was sufficient, such delinquent list was never certified by the county auditor. All tax sales are made exclusively under statutory authority or power. In 2 Cooley on Taxation, 3d ed., p. 912, the author states as follows:

"The power which the state confers to assess and levy taxes does not of itself include a power to sell lands in enforcing collection, but the power to sell must be expressly given. The officer who makes the sale sells something he does not own, and which he can have no authority to sell except as he is made the agent of the law for the purpose. But he is made such agent only by certain steps which are to precede his action, and which, under the law, are conditions to his authority. If these fail, the power is never created. If one of them fails, it is as fatal as if all failed. Defects in the conditions to a statutory authority cannot be aided by the courts; if they have not been observed the courts cannot dispense with them, and thus bring into existence a power which the statute only permits when the conditions have been fully complied with."

And again, on page 927, that noted jurist states: "In some of the states a list of delinquent lands is made out and properly certified by the state auditor, or some other designated officer of the state, to whom the returns of delinquent taxes have been made, and this list is transmitted to the county or township official who by law is intrusted with the duty of making sales, and constitutes his warrant for doing

so. In other states the statutes make other special provisions for the purpose. Whatever list, certificate, or warrant is prescribed by the statute is to be looked upon as in the nature of process, and it is indispensable that the officer should have it before taking any steps toward making a sale.''

Under the provisions of our statute, the tax collector has no authority to proceed and sell property for delinquent taxes until he has received the delinquent list, properly certified. That is his warrant or process for making the sale. In this case a delinquent list with the proper certificate was never made and delivered to the tax collector, and any attempted sale by him was void, for without such delinquent list and certificate he had no warrant or process on which to base a delinquent sale.

It is contended by counsel for appellant that under the provisions of the statute, sec. 1649, every tax has the effect of a judgment against the person, and every lien created thereby has the force and effect of an execution, and that the judgment is not satisfied nor the lien removed until the taxes are paid or the property sold in payment thereof. While that is true, the tax collector has no authority to sell property for delinquent taxes until he has received the delinquent list properly certified. That is his process. The law makes certain judgments rendered by the district court a lien upon the property of the judgment debtor, but who would contend that even though it is made a lien, the sheriff could proceed and sell without an execution?

. In *Kepley v. Scully*, 185 Ill. 52, 57 N. E. 187, the court held that where a clerk's certificate is made by statute the process under which the property is sold for taxes, when the certificate is not made until after the sale, the sale is void.

In *McGhee v. Sampselle*, 47 W. Va. 352, 34 S. E. 815, the law provides that the sheriff shall append to a list of delinquent lands a prescribed affidavit, and it is held that if he omits to do so, the sale is void. In *Mullins v. Shaw*, 77 Miss. 900, 27 So. 602, 28 So. 958, the court holds that the assessment-roll is the warrant of the tax collector for collecting the taxes. (*Kelley v. Craig*, 5 Ired. L. (27 N. C.) 129;

*Frazier v. Prince,* 8 Okl. 253, .58 Pac. 751; *Morrow v. Smith,* 8 Okl. 267, 61 Pac. 366; *Asper v. Moon,* 24 Utah, 241, 67 Pac. 409; *Lamb v. Farrell,* 21 Fed. 5.)

The delinquent list, properly certified, as provided by said sec. 1742, is the process or warrant, and the only process or warrant, upon which the tax collector is authorized to proceed and sell property for delinquent taxes. Where a delinquent list, properly certified, constitutes the warrant or authority for the sale, the tax collector has no authority to proceed and make a sale without the list so certified. As well might a sheriff proceed to sell lands to satisfy a judgment without an execution. All of the provisions of the revenue statute certainly ought not to be construed to be merely directory and left to the option of the officer whether he will comply with the law or not.

It is suggested in the majority opinion that a mere failure on the part of officials to perform the duty required of them by law cannot be taken advantage of by a property owner for the sole purpose of escaping taxation. There is nothing in the record to show that the respondent has attempted to take advantage of the mere failure of officials to perform their duties for the sole purpose of avoiding the payment of his taxes. He came into court and tendered the full amount of taxes paid by the appellant, with eighteen per cent interest thereon from the time the money was paid, and under the law he could not escape the payment of the taxes. In other words, the respondent is not seeking to evade the payment of his taxes, and it is unfair to him to intimate that he is seeking to do so. The judgment of the trial court ought to be affirmed.

Petition for rehearing denied.